Good morning, your honors. May it please the court. My name is Ding Chen, and I am the pro se appellant in this case. I would like to reserve two minutes for two minutes for rebuttal. This case involves a de novo review of a decision made by the Army Board for Correction of Military Records, which I will refer to as the Correction Board or the Board for Brevity. In 2020, the Correction Board affirmed Chen's 2012 discharge from the Army without a modification. Challenging the Correction Board's decision is, in effect, challenging the underlying discharge. Both the Correction Board's decision and the discharge are legally flawed for two primary reasons. The first primary reason is as follows. During the discharge process, the Army skipped a critical procedural step required by its own regulations. The Army Regulations 635-200, paragraph 7, 7-17a2 requires that commanders verify the specific allegations underlying proposed discharges for fraudulent entry. This verification of allegations prior to discharge is a mandatory procedural requirement, not a discretionary act. The regulation even provides an example on how to conduct the verification. Well, in what sense should they not verify the... I mean, one of the problems I'm having with this case is that the government is somewhat unclear as to exactly what was the basis for finding that there was a fraudulent entry, but into the Army, but assuming at some points it seems to be that there was an actual fraudulent marriage, and they seem to have made a finding at some junctures maybe that there was an actual fraudulent marriage. So why isn't that, why didn't, in what sense didn't they verify that? They got information from USCIS, and what were they, what should they have done that they didn't do? Well, the Army Regulation requires the verification. I know. What should they have done to verify it that they didn't do? They determined, the Army determined by itself, but the Army has no jurisdiction over the marriage, because the marriage occurred before the enlistment. That's out of the Army's jurisdiction. Therefore, the Army cannot determine it. The Army has to verify it. So if someone committed a crime before they joined the Army, but there hadn't yet been a proceeding, a criminal prosecution, but they committed the crime, and then later there's, the Army looks into, did this person commit this crime, the Army can't decide that someone shouldn't be in the Army because of the crime they committed? You said somebody admitted? I never admitted. I denied it. But that's what they say is the problem, that you, that this happened and you didn't admit it. And then somebody needs to prove it. And it happened, right?  So what do they have to do to prove it happened? Can't they simply go investigate the facts and come to the conclusion that it happened? That's out of the Army's jurisdiction. Why? The Army cannot make a determination because that's before the enlistment. And the Army Regulation says clearly — I mean, the word verification doesn't mean that it has to be on a piece of paper. They can just go find the facts. They can say the facts. We've looked into the facts, and in fact, it was not a legitimate marriage, and therefore, he wasn't legitimately in the country. The question is, did they do that? That's a different question. But why couldn't they do that? Well, if you look at some facts and then draw a conclusion, so that's the determination. And to do the determination, you need a jurisdiction. Well, hold on. But they said that they looked at the statements of your wife, who said that you had mutually agreed that you would pay her money in exchange to help her securing the green card, among other things that they indicate. Why isn't that investigation that they did, why isn't that sufficient for them to conclude that you did not have a valid immigration status when you entered the Army? Okay, first of all, they do not have a jurisdiction. So, and the details about the marriage and the validity about the marriage is outside the scope of this case. So, can I go back? I just want to clarify why you're saying there's this jurisdiction problem. So, imagine, I just said crime before, but let's make it more specific. So, let's say there's a bank robbery, and there's video of the bank robbery, and someone commits this bank robbery, and Joe Smith enters the Army. And after they're in the Army, the bank robbery video becomes clear, and the Army looks at the video and says, this is definitely Joe Smith robbing the bank. You're saying the Army cannot kick out Joe Smith because they don't have jurisdiction? Correct. Why? Where does it say that? Because the Army's jurisdiction is the UCMJ. It started from the enlistment. So, before the enlistment, the Army has no jurisdiction. But what statute says that? I mean, why does the Army need to keep the bank robber in the Army if they don't want to? Well, if they don't want to, they can find some valid reason for the discharge. But they specifically used this reason. But this reason, they don't have a jurisdiction to make that determination. And where does it say that? The UCMJ, the Unified Code of Military Justice, it says the jurisdiction part, it says the Army's jurisdiction starts from the enlistment. So, before the enlistment, I was a civilian, and the Army has no jurisdiction over a civilian. And, well, if we disagree with that, what further argument do you have? Another argument is the, okay, so, okay, the second primary reason is as follows. During the discharge process, the Army skipped another critical procedural step required by its own regulations. Specifically, the Army failed to provide Chen with a meaningful opportunity to respond to the allegation prior to discharge, thereby violating both the applicable regulation and the— Can I ask a question? Where in the record can we find what—were you asked anything specifically? When you applied to go into the Army, I understand you presented your employment card. Did you claim to have a visa, or did you—I mean, what in the record shows what you presented to the Army in terms of your immigration status? I presented my employment authorization card. Did they ask you anything else? No. Is there anything in the record that shows that they asked you whether you had a visa or asked you what your immigration status was? No. And at that point, what was your immigration status? You were an applicant for a visa based on your marriage, but did you have a temporary visa at that point? No. The working permission—that working authorization card is my—is the only document related to the immigration, and I submitted that to the Army. Okay. And anywhere in the application, was there a question about whether you were legally in the country? Was that somewhere in the application? The working authorization card, that's the only thing I provided to the Army. And nobody asked for anything else? No. Okay. And then the ultimate finding was that you said you had a visa, but you didn't. Did you say you had a visa? Well, I think that's because there's some misunderstanding. The commander doesn't know that I have a visa. He doesn't know the difference between the visa and the— That may be correct, but that's what I'm asking you. Did you ever say, I have a visa? No, I never said I have a visa. And were you ever asked whether you had a visa? No, nobody asked me. The only thing I provided was my working authorization card. Were you asked whether you were legally in the country, whether you had legal immigration status? Well, I provided my working authorization card, and they approved that. Go ahead.  Okay. The Army failed to provide the chain with a meaningful opportunity  to respond to the allegation prior to the discharge, thereby violating both applicable regulation and the chain's due process rights. Chain was discharged without oral argument. The only opportunity to respond to the allegation was to submit written rebuttal materials. The Army Regulation 635-200 paragraph 2-2C2 provides that soldiers have the right to submit a statement in his or her own behalf prior to discharge. This right to submit inherently implies that any submitted materials must be properly reviewed and considered. Otherwise, the right to submit would be rendered meaningless. However, in this case, chain's submitted rebuttal materials were not properly reviewed or considered by the commander with the separation authority. So can I ask about that? I know they didn't agree with you, but how do you know that they didn't look at what you submitted? That's because I submitted, but there's no record that I... There's no record. And then the separation authority, when he made the determinations and the findings, he specifically addressed some other materials. But maybe he believed those materials more than your materials, and that's why he talked about the other materials. Maybe, but he didn't mention my material at all. And even if he didn't mention the material, he should still keep my submitted material in the record. But my material is not in the record. So that looks not normal. And you found that out because you requested the file and your submission wasn't in the file? Correct. I mean... Was your submission electronic or on paper? No, paper. Paper? Yeah. And so you don't know where that paper is now? I have no idea. I don't know. You had wanted to save time for rebuttal. Should we let you save the remaining time? Yeah. Okay.  Thank you. Good morning, Your Honors. Corey Webster on behalf of the Secretary of the Army Dan Driscoll. I think I want to start by addressing Judge Friedland's hypothetical in the scenario where there was someone that was bankrupt, the Army would have authority. And I think where the disconnect is, is there wouldn't be authority to issue, to have criminal charges brought against that person. But there would absolutely be authority under the separation, administrative separation procedures that this case is about to separate that individual. And is that written somewhere? Well, it's under the procedures that we're talking about here, 7-17 of Army Regulation 635-200. There's not an example given of a bank robber. But if you run that through the tests that the separation authority is required to do under paragraph 7-17, I think that that would be the conclusion they would reach. Now, that's not for me to say that that would be the determination made. But if that determination is made, then it would be supported. It would be authorized by that regulation. And sorry, would that be because something would have been fraudulent when the person applied? What would be the basis under 7-17 to say, to address this bank robber? Okay, so the question is whether, essentially, is this of the disqualifying character? That's the first test, which paragraph A-1, which refers to what the separate regulation that tells us what is disqualifying and not. But it says what is previously concealed information, whether the previously concealed information. So are you saying the bank robber would have an obligation to reveal the bank robbery in applying for the Army? Yes. All right, so what was the disqualifying information here? Here, it was the fraudulent marriage. So he should have revealed that he had a fraudulent marriage. He should have revealed the circumstances of his marriage that it would... Yes, it was the fraudulent marriage. He should have revealed the circumstances of the fraudulent marriage, that he had agreed to pay Ms. Larimore to marry him in exchange for money so he could get a green card, as well as the fact that it was investigated, that there was a search warrant and arrest warrants executed at his residence. Is there any question that he should ask him whether he was investigated? Ask him whether he was investigated? Yes. Well, not directly saying were you investigated, but in terms of what there's a duty to disclose. So this gets to Army Regulation 601-210. In that regulation... Which paragraphs? Hold on just a moment. Actually, I think where we want to start here is the form. The form that is submitted by the enlistee. So Mr. Chen fills out the form. And on that form, let me find where in the record this is. I can direct you to it. The SCR-397, that form? 397. Is that form G-845? Yes. Yes, that's the form. It's not known. It's not SR-397. It's not G-845. It's the... Apologies. Just one moment. 86, that one? That's the right... Yeah, say the number again, sorry. 86. Yes, that's the form. Okay. So on the second page... Wait, sorry. Wait. Where in the record is this? Where in the record? I don't know what you're talking about. Or maybe you do. I apologize. Let me grab it. What SCR number? What... Okay, page 803 of the supplemental excerpts. Form 3286. Another one. Statement for enlistment. So there's two documents that look like this. They both are titled Statement for Enlistment. In both of them, now I'm on the second page, supplemental excerpts 804. And in this... On this page, there's representations about... Understandings based on what might happen if there's any misrepresentation in terms of his eligibility to become a citizen. And then... So could you point us to their letters? Could you point us to where you think it required him to say that the marriage was fraudulent? Which one is relevant?  So in fact, the specific language, I'm sorry, is in the second Statement for Enlistment, which follows that one in the record, starting at page 812. On page 813, paragraph 3F. I have provided complete, detailed, and accurate background information in regards to a list of a few different categories of things, including moral history. All right, but this is why I got confused, because that your brief does rely on that. But that isn't the basis on which he was separated. It wasn't his failure to answer that general question or any particular question. Actually, it was that he actually... It was something to the effect of that he said he had a visa, but he didn't. Well, this is not the only basis here. This is something that required the disclosure. But he had to have valid immigration status through the MAVNI program. So which one is it that was the basis for the separation? Which is that he didn't have the valid immigration status, that he said he had a valid immigration status, but didn't? Or what? Or that he didn't answer the question by saying he didn't have a valid immigration status? It's very murky in the record and in your briefs. He was required to have valid immigration status. He represented that he did through his employment authorization document. Well, he gave him the... That was a valid employment immigration document, right? No, it was not valid. It wasn't valid? It was issued by the government, but it was not valid in the same sense that suppose there was a requirement to give a government-issued ID to present that. And if I present that with my enlistment, but I had procured that through fraud, it wouldn't be a valid... It was issued by the government. It wasn't forged, but it would not be valid. But Mr. Chin was right in that the officer who wrote the report seemed confused about whether he said he had a visa, but he didn't have a visa. But that's not true. He never said he had a visa. Yeah, that's not the basis for... But that's what it said. It said he claimed to have a visa, but he didn't have a visa. I think what... Or he didn't have a valid visa. What is being represented there is his immigration status was represented to be valid. Now, there was the application for the green card. By having a pending application, he then has issued the employment authorization. And he did have a pending application. Sorry? He did have a pending application. Yes, and he had a pending application. And so when the enlistment application came in... And they could have adjudicated it and found that it was fraudulent eventually and revoked the card. But in fact, they never did that. And in fact, they ended up giving him citizenship. USCIS did eventually give him citizenship, but not based on that application that was pending at the time. It wasn't an application for citizenship in the first place. Right. That was something that was done separately. But apparently, USCIS never actually determined that he had engaged, had a fraudulent marriage. It never made... And if he did have a fraudulent marriage, he couldn't have gotten citizenship. It never made any adjudication one way or the other. The only body that did is the military. And it did so within the ambit of making a determination for administrative separation under the procedure that the board followed here. And there's nothing that prevented them from doing so. Wait, so I guess I just want to be clear about something. I thought the board said, we're doing a discharge here because you did not have a valid immigration status. And the valid immigration... The reason you didn't have a valid immigration status was that you had this fraudulent marriage. When you indicated that you were married and that you had a legal right to be here, that was incorrect. That was false. Is that correct? That's right. Yes. Yeah. That's the basis for the finding. Exactly. And the eventual citizenship, in your view, does not contradict that in some way? The eventual citizenship doesn't sort of implicitly say you never lied about your marriage? What is the basis of the eventual citizenship? As far as I know, it was based on his military service. But we don't have a record of the citizenship application and determination or anything that was undertaken in that. And I don't think that it does bear on this at all. There's not some sort of implicit adjudication of the marriage, because it was not this... What we do know is that it was not based on the marriage, because the marriage was... And so this response to Judge Mendoza takes us sort of away from the line of questioning from Judge Berzon, I think, because it doesn't matter what he disclosed or not, because fundamentally the problem was that you think the marriage was fraudulent. We don't need to worry about what the questions were or whatever, because it's just the underlying fact is the problem. Is that what you're saying? I think that's exactly right. But that's the opposite of what you said before. This is why I became confused about this case, because what you said before was the problem was that he was asked a general question about any moral information, and he didn't answer that. Well, that's a question on the — I think one way of looking at it is, where was a question on the form that would have prompted answering this way? That's the question. That's — I'm answering — I'm — where in the — in the enlistment form did he answer? Well, your answer to Judge Friendland is it doesn't matter whether there was a question on the form that would have prompted anything. And it does seem to me that the basis for the separation was the conclusion that, in fact, he concealed information that it's conditional residence in the country at the time was not valid because his visa was procured from a fraudulent marriage. Now, that's not accurate, because he didn't have a visa, and he didn't say he had a visa, but it's somewhere in the vicinity. And he concealed that information. And that's all the court needs to look at to see whether is there substantial evidence supporting that. And there absolutely is here. And I'm happy to recite some of the top evidence, but Judge Mendoza referred earlier to some of that, which was the ex-wife's admission that there was an agreement between the two of them to marry for the purpose of him getting a green card. There was also evidence — another witness who observed the two of — that was a witness. Okay. I'm sorry. Can I interrupt? We know what that evidence is. Yeah, yeah. It seems like you've given inconsistent answers. So Judge Berzon is looking at the actual letter, and it says this thing about failure to disclose. So are you defending that as the basis, that there really was a failure to disclose? Or are you telling us none of that matters, because regardless of what it said about disclosure, the real problem is he didn't have a real marriage? You have two ways — It's the failure to disclose the circumstances of the fraudulent marriage. Okay. So you're back to this being the reason. I mean, I don't know — I don't see that being different from what Judge Mendoza was saying. Well, if the question is whether he could have — if you're trying to defend the discharge just on the basis that the marriage was fraudulent, then it doesn't matter what questions were on the form or what he said or anything, because the only issue is whether you had substantial evidence that the marriage actually was fraudulent. The other one embeds this issue of whether he should have said something about it. Yeah, well, the tie-in is that under paragraph 7-17 of the regulation, what is being found is fraudulent entry into the Army. And so that's the tie-in. You did not disclose the fraudulent marriage. That's what is the basis here. So they do tie together, and they tie together in that the finding of fraudulent marriage ties into the basis for separation, which is paragraph 7-17, fraudulent entry. And you're basically saying that once there is a fraudulent marriage, you had the duty to disclose it. Because the fraudulent marriage was the basis for him having valid status to enter, to enlist. Okay. Can I go to the question that we ended with, with Mr. Chen, which is this — he's saying there should have been an opportunity for him to respond. He thinks it should have been oral, but even if it was written, he submitted something written, and it's not in the file. Can you respond to that? Yeah. So what he did submit that's written is in the file. How I understand the argument is that there was some additional material besides what is in the administrative record that he submitted. Can you point us to where that is? Where is his part of the — what his submission in the file? Just because it seems like he thinks it's not there. So then if we see it, we might understand better. Yeah. So his application starts — That's his application, but he apparently — he maintains that he submitted information or an argument that — as to the separation or as to the attempt to change the documentation of the separation, which is not in the file. That's not about his application. So I don't see anything in the record that gives us any hint about some unidentified material. I think to this day, I haven't seen in any of the briefs any identification of exactly what he thinks was submitted that isn't in the record. And I think where we — that leaves us is, under the case law for APA cases, is a presumption that the process — that what's in the record is the complete record. And there's nothing even in the record that could tell us — suggest that there's something. I mean, what's ultimately disturbing here was that he was never — was he ever — he came in with this employment card, which is not, in fact, a visa, which apparently the recruitment person didn't realize. Was he ever asked whether he had valid immigration status at the time? Was he ever asked that question? Like, by a person? By a person, by a piece of paper, by anything else. He was asked to provide documentation of that, and that's what — that's why he presented the employment authorization document. And how do we know he was even asked that? I mean, apparently — Because he would not be eligible for the — to enlist in the Army as a non-citizen unless he had that. OK. But, in fact, that doesn't prove anything. And nobody ever asked him whether this is — what his immigration status was. Do we know that anybody ever asked him what his immigration status was, ever? All we know is that he was required to provide valid immigration status, and he presented that as his basis for valid immigration status. Where — other than the fact that we know he presented that card, is there a question somewhere or some statement or some evidence that he was actually asked whether he had — There's not evidence that a person asked him, but — That a piece of paper asked him? Yeah, the form that — under which he's applying through the MAVNI program talks about what are the eligibility — states what's — what he must show for eligibility. It doesn't — I don't know that it's — there's a question there that says, are you — do you have status — You have to be in valid status in one of these categories for at least two years. Two consecutive years, correct. I see. So, it directs him to those requirements, and then he submits the application, affirming that he satisfied those requirements, and he submits the authorization as the basis for his status for the past two years. And I — I think with regards to the status of immigration — of immigration status, I think in S.E.R. 397 to 398, Mr. Chen did, in fact, indicate that his — had a pending adjustment of status when he was asked by the Army. Is that correct? Yes, and that's the basis for him getting the employment authorization document. All right. Okay. But he did have a pending adjustment of status. He did have — sorry? He did, in fact, have a pending adjustment of status at the time. Yeah, at the time. That's right. Okay. Based on the marriage, yep. All right. I see I've been over time here. I just — we just ask that the Court affirm the judgment. Thank you. Thank you. We have some time for rebuttal. Okay. May it please the Court. About the — my immigration status, I was never asked to provide some additional visa or something. I only submitted my working employment authorization card, and the Army approved. And here on the document, the waiver, it says, yes, I believe there was a waiver issued in — if you want to have a look. So, okay, this is my immigration status. And also, regarding my marriage, that my ex-wife has a drug problem, and whatever she said is not very reliable. And also, Your Honor just mentioned that there's some money. But I — well, the issue is, I never admitted that one first. And then, to determine if a marriage is fraudulent — Sir, I'm not saying that that's true or not true. What I was referring to is that that's what the board decided to base their decision that the immigration status was invalid. Yeah. That's what they decided. Okay. But even if there's some money transfer, still, the marriage could be real, because to determine if a marriage is a real marriage, the only thing is to see if the couple intended to establish a life together when they married, at the time when they married. So, but even if there's some money transfer, so, and — Can I ask you about the things that are missing from the file that you say? Do you have a copy of the written papers that you say are missing from the file? Like, did you keep a copy for yourself of what you gave them? Well, that's many years ago. Because you say something's missing from the file, but we don't know what it is, right? Because unless you show us, this is what I sent on this day, here's the record of me sending it, we don't know what you're talking about, right? But, okay, so the — And what it's related to. Related — Why is that important? And so what you say is missing material having to do with the separation. Were you responding in some way? Yeah, I responded. I submitted rebuttal materials, but I believe it's more probable than not that it's not revealed by the commander with the separation authority. And this is a violation of the regulation. But what did it say? Did you write, I love this wife? What did you write that they didn't consider? I provided some, but anyway, I don't remember. But I did provide a lot of materials from friends, from doctor, and from some police officer who had some record for some family issue, something — And those things said, this is a real marriage? I used those documents to show that, well, I forgot the details, but anyway, the regulation says the right to submit means not only the submission, but also the submitted materials need to be revealed by the — But if we don't know, if you didn't keep a copy so that we can say, here is what he sent that's not in the file, we don't know how to tell whether what you're saying is right. But based on the Laudamill case, the due process requires that I was given an opportunity to respond. And this, if this submitted materials is not revealed, then I was not given a meaningful opportunity to respond prior to the discharge. And this is a structural due process violation. So — That may be, but to prove that you're right, you'd have to say, here is what I sent on this day, here's the proof, here's the FedEx receipt, and you don't seem like you have anything like that, right? I have an email correspondence between the Army officer and the — Here's the email correspondence between the Army officer and the USCIS officer, and it says specialist Chen submitted copies of his employment authorization cards. This is on the May 29, 2012, Tuesday. So this email can prove that I submitted something. But they have your employment authorization card. That's not missing. Other than this one, I also have other documents. This is just one piece of the document. I submitted other things. Okay. And it should be revealed that this is required by the Army regulation, and this is also required by the due process of the Constitution. No, thank you. No. Okay, thank you. One more thing is the — nobody really determined the alleged fraudulent marriage. And on the other hand, you just mentioned the naturalization. On the naturalization certificate, the director of the USCIS said that Chen, having complied to, in all respects, with all of the applicable provisions of the naturalization laws of the United States, being entitled to be admitted as a citizen of the United States. So the director of the United States Citizenship and Immigration Service signed on this document. This is the official document signed by the director of the USCIS, and it says, I complied in all respects with all of the applicable provisions of the naturalization laws. USCIS knew about the marriage investigation because they're the ones who went to the Army about it. Well, the USCIS conducted the investigation. And they also, at some point, reported it to the Army. Correct. And then they investigated. But after the investigation, there's no negative outcome. And after I was discharged, I naturalized. And I have this document. Okay. Thank you. I think we understand your arguments. Thank you very much. Thank you, both sides, for the arguments. This case is submitted.
judges: BERZON, FRIEDLAND, MENDOZA